IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARISSA DAMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 2:19-cv-01131-RJC |
| | ) |
| ROCHESTER AREA SCHOOL DISTRICT, | ) |
| JANE W. BOVALINO, Superintendent, and | ) |
| MICHAEL S. DAMON, Principal, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge.

Presently pending before the Court is a Motion to Dismiss for Failure to State a Claim (ECF No. 5) filed on behalf of all Defendants. For the reasons stated herein, the motion will be denied, except for those claims which defendants have voluntarily withdrawn.

**I. Procedural and Factual Background**

The original complaint in this action was filed on August 20, 2019, and Defendants removed this action from the Court of Common Pleas of Beaver County, Pennsylvania on September 6, 2019. (ECF No. 1). On October 14, 2019, Plaintiff filed an Amended Complaint (ECF No. 4), the operative pleading. On November 4, 2019, Defendants filed the now-pending Motion to Dismiss with Brief in Support. (ECF Nos. 5, 6). Plaintiff has filed a Response in Opposition and Brief in Opposition thereto (ECF Nos. 10, 11) to which Defendants have filed a Reply. (ECF No. 12). The matter is now ripe for disposition.

We have jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

1

Broadly speaking, Plaintiff Charissa Daman ("Daman" or "Plaintiff") alleges her former employer retaliated against her after she reported alleged misconduct by another teacher in her school where they both worked. Named as Defendants are the Rochester Area School District (hereinafter, "the School District"), Jane W. Bovalino, Superintendent of Rochester Area School District) (hereinafter, "Superintendent Bovalino), and Michael S. Damon, Principal within the Rochester Area School District (hereinafter, "Principal Damon"). At Count I Daman asserts retaliation and discrimination in violation of the Pennsylvania Whistleblower Act, 43 Pa. Cons. Stat. §1423(a). At Count II she alleges retaliation in violation of the First Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983.

The allegations in the complaint are as follows. In the fall of 2005 Rochester School District hired Plaintiff as a full-time teacher at its Middle School after she had worked as a Summer School science teacher. From 2005 until the 2010-2011 school year, Daman worked at the Middle School without incident. (Amended Complaint, ¶ 7). In 2010-2011 Daman began teaching art at the High School. She claims that she was an "exemplary teacher" up until 2018 when she was allegedly treated differently because of the report of wrongdoing. (Am. Compl. ¶ 8).

Daman alleges in February of 2018, in her role as a Science/Art Teacher, she had access to and used the School District's online course system, "Edgenuity," (Am. Compl. ¶ 9). She alleges she discovered Steve Proctor, a guidance counselor, supervising and making changes to students' grades in areas and classes where he was not certified. According to Daman, only the certified teacher can and should make changes to students' grades. (Am. Compl. ¶¶ 9 and 10). Daman specifically alleges that she discovered Mr. Proctor was making changes to at least a dozen different students' grades where he was not certified as a teacher and that the changes

include modifications to test scores and overall grades. (Am. Compl. ¶ 11). She alleges the changes showed that students were being awarded higher test scores than their actual scores "in violation of ethical and legal guidelines". (Am. Compl. ¶ 12). Daman presumed the guidance counselor made the grade changes "at the direction of school administration officials without the consent or participation of the teachers who were authorized to make such grade changes." (Am. Compl. ¶ 27, 44).

When Daman learned of the guidance counselor's alleged misconduct, she reported it to School Board member Dennis Iannini. She consulted with another teacher, Isaac Dixon. Later in the spring of 2018, she brought the information again to the School Board member Iannini and to another School Board member, George Bauer. She avers that she did this in the hopes that action would be taken to correct the unethical grade changes. (Amended Complaint, ¶ 13). No such action was taken.

In early June 2018 Superintendent Bovalino confronted Daman and summoned her to a meeting. (Am. Compl. ¶ 14). Superintendent Bovalino punished Daman for her discovery in reporting the grade changes. She banned Daman from using Edgenuity, gave her a Google Chrome Book to use and took away her laptop computer. (Am. Compl. ¶ 15). Daman alleges that the Chromebook was a downgrade in capability and made it difficult for her to perform her duties as a teacher, thus a punishment in retaliation for reporting the grade changes. (Am. Compl. ¶ 16).

In August 2018 Daman she reported the alleged fraudulent grades changes and retaliatory activity to the United States Department of Education, the Pennsylvania Human Relations Commission, and to various Rochester School District "associated individuals" out of concern for student welfare and the welfare of the School District as a whole and not pursuant to

her role as a teacher. (Am. Compl. ¶¶ 17-19).  Plaintiff alleges she reported the activity "not in her role as a teacher, as she had no job duty, listed or otherwise, to report this activity.  Instead, she reported this activity out of concern for the welfare of the students and Rochester SD as a whole."  (Am. Compl. ¶ 19, 48).

After she returned to work in the fall of 2018 her situation had "irrevocably changed." In December 2018 Rochester School District contacted the police and filed a police report against her stemming from an incident wherein she had "allegedly directed her students to remove some tile from the classroom floor." (Am. Compl.  ¶ 20). Daman asserts that the tile was damaged and in a dangerous condition for some time, causing students to slip and fall; it also caused students to peel the tile up on their own.  The School District contacted the police on or about December 20, 2018 and Daman resigned on December 21, 2018 after Superintendent Bovalino informed her that she would recommend Daman's termination to the School Board.  (Am. Compl.  ¶ 22). Criminal charges were filed on February 2, 2019.  Daman alleges the School District only did so at that time because Daman had filed for unemployment on January 13, 2019. (Am. Compl. ¶ 21). Daman speculates the School District would have received notice of the filing of the unemployment claim anywhere from one to two weeks after the filing and that said notice resulted in the School District allegedly retaliating with the filing of criminal charges just two weeks later. (Am. Compl.  ¶ 22). Daman alleges that Superintendent Bovalino, Principal Damon and the Board of Directors acted in concert in punishing and constructively terminating her because she reported the fraudulent grade changes. (Am. Compl.  ¶ 23).

Attached to the Defendants' motion to dismiss is a Court of Common Pleas of Beaver County criminal docket, CP-04-CR-0000431-2019 which details that  the Commonwealth of Pennsylvania charged Charissa D. Daman with one count of criminal solicitation under 18 Pa.

4

C.S. § 902A, a felony grade 3, which occurred on December 21, 2018.[1] The docket describes the offense as "Criminal Solicitation – Institut'l Vand'ism Educ Facil." (Motion to Dismiss, Exhibit A, ECF No. 5-1).  Daman waived her right to a preliminary hearing. She entered into the Accelerated Rehabilitative Disposition Program in the Court of Common Pleas of Beaver County and completed that program on October 25, 2019. The criminal case was closed on that date. (ECF No 5-1).

## II.  Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1] The court relies on these documents without construing defendants' motion to dismiss as one for summary judgment because judicial docket sheets are public records, of which the court may take judicial notice in deciding a motion to dismiss. *See Pension Ben. Guar. Corp. v. White Consol. Industries, Inc*., 998 F.2d 1192, 1196-97 (3d Cir. 1993) (defining public records to include, inter alia, criminal case dispositions, such as convictions or mistrials); *Dean v. Copozza*, 2013 WL 1787804, at *1 (W.D. Pa. 2013) ("Pennsylvania's Unified Judicial System provides online access to the docket sheet for criminal cases, and this court may take judicial notice of those dockets.").

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.... Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (*quoting Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr, Corp.*, 809 F.3d 780 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal,* 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. *See also Burtch v. Milberg Factors, Inc*., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679.

809 F.3d at 876-77. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679 (internal citations omitted)

While a District Court is generally limited to a plaintiff's complaint in assessing a motion to dismiss, when a document is "integral to or explicitly relied upon in the complaint [, it] may be considered without converting the motion [to dismiss] into one for summary judgment."[2] *In re*

---

[2] Plaintiff has attached to her Response an Exhibit, which is a Powerpoint presentation with respect to her reporting of the misconduct. Defendant rightly objects to this submission as a matter outside the pleadings and an inappropriate attempt to amend the Amended Complaint. Regardless, the contents therein duplicate existing allegations. Even if we were to consider the contents of the exhibit, which we do not, it does not materially impact our analysis of whether the Amended Complaint should be dismissed for failure to state a claim.

*Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir.1997) (internal quotations omitted). In addition to considering the allegations of the complaint, in connection with a 12(b)(6) motion, the court may consider matters of public record.  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993)).

### III. Discussion

#### A. **Withdrawn Matters**

At the outset, we note that Plaintiff has withdrawn all claims against Principal Damon. (ECF No. 11 at 15).  Accordingly, the motion to dismiss will be granted with prejudice as to that defendant.  In addition, Plaintiff has withdrawn all claims for punitive damages against all defendants.  (ECF No. 11 at 15). The motion to dismiss will be granted as to any claim for punitive damages.

#### B.  Count I:  Pennsylvania Whistleblower Law

The Pennsylvania Whistleblower Law provides that "[n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee ... because the employee ... makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste." 43 Pa. Cons. Stat. Ann. § 1423(a).

"To assert a prima facie case under the Pennsylvania Whistleblower Law, a plaintiff must plead that, prior to the alleged acts of retaliation, [s]he had made a good faith report of wrongdoing to appropriate authorities." *Kimes v. Univ. of Scranton*, 126 F. Supp. 3d 477, 505 (M.D. Pa. 2015) (quoting *O'Rourke v. Commonwealth*, 778 A.2d 1194, 1200 (Pa. 2001) (internal quotations omitted)). The plaintiff must also present evidence of a causal connection between the

report she made and the alleged acts of retaliation. *Baylets-Holsinger v. Pennsylvania State Univ.*, No. 18-0060, 2019 WL 2016553, at *6 (M.D. Pa. Mar. 22, 2019).

Defendants argue the alleged "wrongdoing" does not meet the requirements or definition under Pennsylvania Whistleblower Law. In addition, Defendants argue that even if she could show the guidance counselor's wrongdoing met the requisite definition, Defendants acted for separate and legitimate reasons, i.e. Plaintiff admits she resigned because she was accused of directing students to remove floor tile in the classroom on December 21, 2018, for which she faced criminal charges.

As to the first argument, we note Section 1422 of the Whistleblower Law defines the following terms:

> "Wrongdoing" is a "violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer."
>
> A "good faith report" is a "report of conduct defined in this act as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true."

43 P.S. § 1422.

In *Kimes v. Univ. of Scranton*, 126 F. Supp. 3d at 504, the court explained:

> The test is objective, not subjective; that is, it does not matter whether the plaintiff holds a belief, even if well-founded, that the conduct constitutes wrongdoing. What is required under the statute is that the plaintiff prove there was an actual "violation" of the laws, regulations, ordinance, or code of conduct or ethics "which is not of a merely technical or minimal nature[.]"

Plaintiff has alleged three statutes which were allegedly violated by the grade changes, any one of which, despite Defendants' arguments to the contrary, could possibly be "of the type that the employer is charged to enforce for the good of the public or is one dealing with internal

8

administration of the governmental employer in question." *Gray v. Hafer*, 652 A.2d 222,224 (Pa. Cmwlth. 1994).

We are guided by the holding in *Bielewicz v. Penn–Trafford Sch. Dist.*, Civil Action No. 10–1176, 2011 WL 1486017, at *5 (W.D. Pa. Feb. 9, 2011) (Lehnihan, J.), *Report and Rec'n adopted,* 2011 WL 1399839 (W.D. Pa. April 13, 2011) (McVerry, J). In that case, a high school teacher's student in her Spanish language class was due to receive a failing grade. After the student's parents complained both to the school administrators and the plaintiff teacher, the student was transferred from plaintiff's class, apparently in contravention of school policy, and placed in another Spanish class. Soon thereafter plaintiff learned the student had a 100 percent in the new class. Plaintiff complained to the principal, who later retaliated by, *inter alia,* lowering her teaching rating and instituting suspension proceedings. The court held:

> In the Court's view, these allegations set forth sufficient facts to state a claim for relief under the Pennsylvania Whistleblower Law that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570. Although Bielewicz does not specifically identify the policy or provision of the ethical code she alleges have been breached, the facts alleged certainly suggest that Defendants' actions were violative of "a code of conduct or ethics" for school officials and, thus, constitute a "wrongdoing" under the statute. Because Bielewicz is only required at this stage of the litigation to state enough facts to raise a right to relief above the speculative level, she has met that burden and Defendants' motion in this regard should be denied.

2011 WL 1486017 at *5. Such is the case at bar, and here, the defendants have the added element of citation to specific rules and regulations which were violated by the guidance counselor when he allegedly changed the grades.

Like the defendant here, the defendant in *Bielewicz* argued that the holding in *McNamee v. County of Allegheny*, 2007 WL 2331878 (W.D. Pa. Aug. 13, 2007) should control the outcome. In that case in the court granted summary judgment on the Whistleblower claim, holding plaintiff failed to demonstrate she complained of "wrongdoing" or "waste" when she

9

reported that defendant's actions violated "several relevant statutes and regulations." The *McNamee* court held the regulations cited were "too general and vague to permit the conclusion that they were violated in a manner amounting to 'wrongdoing' under the Whistleblower law." *Id*. at *4. Yet "the [*McNamee*]Court rejected the plaintiffs argument that she should survive summary judgment because she adequately alleged "wrongdoing" in the complaint, stating that whether or not the plaintiff stated a claim for relief in the complaint was inapplicable to the motion for summary judgment." *Bielewisz*, 2011 WL 1486017, at *6. Rejecting the precedential value of *McNamee*, the court in *Bielewicz* denied the motion to dismiss, stating, "[i]nstantly, all that is required of Bielewicz at this stage of the proceedings is to "allege facts suggestive of [the proscribed] conduct" and "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim." *Id.*

Likewise, we find that Plaintiff's Amended Complaint adequately alleges facts suggestive of the prohibited conduct sufficient ("wrongdoing," under the statute) for the matter to proceed to discovery. Moreover, as to the causation element, as addressed *infra,* she has alleged sufficient facts, in particular the timing of the alleged retaliation, to state a claim to relief that is plausible on its face that there was a causal connection between the reports she made and the alleged acts of retaliation.

Accordingly, the motion to dismiss is denied at Count I.

### C.  Count II:  First Amendment Claim

As to Count II, which alleges retaliation for exercising her First Amendment Right to free speech, Defendants argue her speech did not constitute a "public concern" because students' grades are private under federal law and her complaints to the Department of Education and Pennsylvania Human Relations Commission were of "purely personal interest" to her.  In

addition, Defendants argue her exercise of free speech, by her own admission, was not what prompted her to resign (or be constructively discharged); it was the Superintendent's intent to recommend she be terminated as a result her criminal conduct on December 21, 2018. Defendant School District argues it cannot be subject to *Monell* liability because there is no allegation that Superintendent Bovalino was a policymaker for purposes of alleging constitutional injury arising out of a policy, practice or custom.  Rather, it is alleged the Superintendent told Plaintiff she planned to recommend Plaintiff's termination to the School Board, but the School Board is not alleged to have acted in obtaining Plaintiff's resignation. Defendant Superintendent Bovalino further argues she is entitled to qualified immunity because no legal precedent has held that a teacher's voicing of suspected fraudulent grade changes constitutes a matter of public concern entitled to First Amendment protection.

1. **Failure to State a Claim**

"[T]o plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp*., 463 F.3d 285, 296 (3d Cir. 2006);  *see also, Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009) ("To state a First Amendment retaliation claim, a public employee plaintiff must allege that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action.... If these two elements are satisfied, the burden shifts to the defendants to demonstrate that the same action would occur if the speech had not occurred.") (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006); *Green v. Phila. Hous. Auth.*, 105 F.3d 882, 885 (3d Cir. 1997)).

"The [Supreme] Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos,* 547 U.S. 410, 417 (2006). The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern. *Id*. When "public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. However, if an employee speaks as a citizen on a matter of public concern, "[t]he question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.* at 418; *see also De Ritis v. McGarrigle*, 861 F.3d 444, 452 (3d Cir. 2017)*; Hill*, 455 F.3d at 241-242 ("A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made.").[3]

Here, Plaintiff alleges that her reporting of the grade changes was done in her capacity as a private citizen, and that nothing in her job duties or description would support a finding that she was acting in any official capacity. In response to defendants' argument that the grading data was private under the law, she admits that the content of the grades was private information and that she accessed that information through a private system. Yet she argues the fact that the students' grades were being altered on the Enginuity system is a matter of public concern. She

---

[3] Defendants do not argue they had adequate justification to treat Plaintiff differently, as mandated by the balancing test in *Pickering v. Bd. of Ed. Of Twp. High School Dist*. *205, Will Cnty., Ill*., 391 U.S. 563, 568 (1968). The interests of a teacher, as a citizen, in commenting on manners of public concern, as balanced against the interest of the state in promoting efficiency of its public services, especially where the employee serves no confidential, policymaking or public contact role, poses little danger to the successful functioning of the School District.

alleges the changes showed that students were being awarded higher test scores than their actual scores "in violation of ethical and legal guidelines."

"Speech involves matters of public concern 'when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Lane v. Franks*, 573 U.S. 228, 241 (2014) (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)); *see also Holder v. City of Allentown,* 987 F.2d 188, 195 (3d Cir. 1993) (concluding that speech which "seeks to 'bring to light actual or potential wrongdoing or breach of public trust' on the part of government officials" addresses a matter of public concern) (citations omitted). Although speech on a matter of public concern is often described as speech that relates to "broad social or policy issues" it also includes speech "implicat[ing] the discharge of public responsibilities" by a government office, agency or institution. *Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153, 170 (3d Cir. 2008). Accordingly, after a careful review of the applicable case law and in consideration of the procedural posture of this case, for purposes of deciding the motion to dismiss, we find that Plaintiff has adequately alleged that she engaged in constitutionally protected conduct. *See Bielewicz*, 2011 WL 1486017 at *4 and cases cited therein ("Because questioning the propriety of removing a student from a class in order to avoid a failing grade touches on the manner in which the School District is discharging its responsibilities and suggests potential wrongdoing as well as breach of the public trust, it appears that Bielewicz's speech addresses a matter of public concern and is protected by the First Amendment.")

Next, we must decide if Plaintiff has adequately alleged retaliatory action sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights. Here, we

note the following separate alleged retaliatory acts.  First, Plaintiff alleges retaliation took the form of the Superintendent's banning of Plaintiff from using the Edgenuity platform and replacing her laptop with a Chromebook, a "downgrade in capability" thereby making it more difficult for plaintiff to perform her duties in regard to grading and checking her students' work. (Am. Compl. ¶¶ 15, 16).  Whether this constitutes retaliatory action sufficient under the law remains to be explored through development of the record in the case, however Plaintiff alleges it impacted her ability to perform her job.  Next, Plaintiff alleges retaliation in the form of calling the police on December 20, 2018 and Superintendent Bovalino informing her that "she would be recommending to the school that Mrs. Daman be terminated."  Am. Comp. ¶ 22).   Plaintiff describes this as a constructive discharge, rather than a termination otherwise justified. The court accepts as true all well-pled factual allegations in the Amended Complaint and views them in a light most favorable to the Plaintiff.  Given the temporal proximity to the Plaintiff's reporting to School Board members and other regulator institutions in the spring and summer of 2018, and her December 21, 2018 decision to leave employment, we find that Plaintiff has adequately pled retaliatory action sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights.  Moreover, she has adequately pled a causal link between the constitutionally protected conduct and the retaliatory action.  She had alerted several members of the school board of the alleged wrongdoing in early spring of 2018, the Superintendent revoked her access to Edgenuity soon thereafter.  She again reported the grading discrepancies to the United States Department of Education and the Pennsylvania Human Relations Commission, and in her words, was constructively discharged months thereafter.  While the calling of the police and the  filing of criminal charges against Plaintiff is compelling, and appears to support Defendants' actions as being justified under the circumstances,, we cannot ignore that a record

has not been established at this juncture.  Her protected activity may very well have been a substantial or motivating factor in the what she describes as a constructive discharge. At the close of discovery defendant may be able to establish that the same action would have been taken in the absence of the protected conduct.

For these reasons, the Motion to Dismiss will be denied as to Count II.

### 2. *Monell* liability

The liability of a municipality—in this case, the District—under 42 U.S.C. § 1983 is governed by *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978). Under *Monell*, a municipality cannot be subjected to liability solely because its agents or employees caused injury to another person. *Id.* Rather, a municipal entity may be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" deprives a citizen of constitutional rights. *Id.* at 694. An official policy may be established under three circumstances: (1) the municipal entity adopted and promulgated a policy, the implementation of which caused the constitutional deprivation; (2) the policymaker failed to act affirmatively even though the need to take some action is obvious and the inadequacy of the existing practice is likely to result in the violation of constitutional rights; or (3) absent a formal policy, an official with policymaking authority violated federal law, causing the constitutional deprivation. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003).

To the extent that plaintiff's § 1983 claim is based on the act of an official policymaker, the Court concludes that plaintiff has sufficiently stated a claim. Plaintiff may establish that the District is liable under § 1983 by showing "a single act by a decisionmaker with final authority in the relevant area" such that the act "constitutes a 'policy' attributable to the municipality

itself." *Board of Cty. Com'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404–05(1997); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–83 (1986) (holding a municipality liable for a county prosecutor's decision to order officers to forcibly enter petitioners clinic, violating the petitioner's Fourth Amendment rights). "If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it ... represents an act of official government 'policy' as that term is commonly understood." *Pembaur*, 475 U.S. at 481. However, "municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id*. at 481, 106 S.Ct. 1292.

Whether a particular official has final policymaking authority for the purposes of § 1983 liability is a question of state law. *Kelly v. Borough of Carlisle*, 622 F.3d 248, 264 (3d Cir. 2010). The Pennsylvania Code vests the authority to determine "whether a professional employe [sic] shall be dismissed" in "the superintendent of schools" or, if so directed by the superintendent, "a principal, who has supervision over the work of a professional employee or temporary employee." 24 Pa. Cons. Stat. § 11:1123(a), (h)(3) (2012). Accepting all reasonable inferences in favor of plaintiff, the Court concludes that plaintiff has sufficiently alleged that Superintendent Bovalino was an officer who possessed final policymaking authority with respect to her alleged constructive discharge and other alleged retaliatory actions. Again, whether liability can be imputed to the School District remains to be seen, but given the allegations of prior communications with members of the School Board, as well as other facts alleged, the motion to dismiss on the grounds of *Monell* liability is denied.

For the reasons stated above, plaintiff has sufficiently alleged a *Monell* claim against the District under § 1983.

### 3. Qualified Immunity

Superintendent Bovalino argues that as a government official sued in her individual capacity she is entitled to qualified immunity from Plaintiff's First Amendment claim. Government officials enjoy qualified immunity "insofar as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In deciding whether a defendant may successfully assert qualified immunity, the court must determine whether reasonable officials could believe that their conduct was not unlawful even if it was in fact unlawful. *Larsen v. Senate of the Commonwealth of Pennsylvania,* 154 F.3d 82, 94 (3d Cir.1998) (citing *In re City of Philadelphia Litig.,* 49 F.3d 945 (3d Cir.1995)). In the context of a First Amendment retaliation claim, the court inquires "whether [the] officials reasonably could believe that their motivations were proper even when their motivations were in fact retaliatory." *Id.* Such a determination requires a factual determination of the official's subjective beliefs and motivations. *Id*. Thus, whether qualified immunity defeats a First Amendment retaliation claim usually cannot be determined on the face of the pleadings, unless the "legitimate basis for the actions [is] so apparent that the plaintiff's allegations of retaliatory motive could not alter the conclusion that ... the defendants would have been compelled to reach the same decision even without regard for the protected First Amendment activity." *Id.* at 95.

We will deny the motion to dismiss the claims against Superintendent Bovalino in her personal capacity. Ample case law supports the proposition that public employees exercising their right to free speech on a matter of public concern may not be subject to retaliatory conduct if that protected activity was a motivating factor in the retaliation. *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 988-90 (3d Cir. 2014). Superintendent Bovalino is alleged to have

stripped Plaintiff of her laptop computer and rights to use the Edgenuity system soon after Plaintiff alerted the school board of the alteration of grades.  She further alleges that after she reported the guidance counselor's wrongdoing to outside authorities, the Superintendent recommended her termination, called the police, and filed criminal charges in retaliation for her actions.

Accordingly, the motion to dismiss the claims against Superintendent Bovalino in her personal capacity on the grounds of qualified immunity is denied.

**IV.  Conclusion**

For the foregoing reasons, the motion to dismiss is granted with prejudice as to Defendant Michael S. Damon, Principal and further, is granted as to any claim for punitive damages.  It is denied in all other respects.

An appropriate Order of Court will follow.


Dated:  May 26, 2020                                         s/ *Robert J. Colville*
                                                                              Robert J. Colville
                                                                              United States District Judge


cc: All counsel of record via CM-ECF